Okay. My name is Andrew Pegas, and with my colleagues Brittany Webb, Lawrence Hendershoch, and Jill Friedlander, we represent Lawrence, the judges of the Court of Chancellor in Delaware. I'd like to reserve three minutes for rebuttal. That is granted. Thank you. Under the District Court's analysis, if Delaware had assigned responsibility for conducting arbitrations to a newly created Department of Arbitration that is staffed by retired state judges, formally formed by the state, the statute's confidentiality requirement would not violate the First Amendment. We agree that that approach would be constitutional, but Delaware's decision to authorize Chiefs of the Court judges to act as arbitrators does not change the result under the First Amendment. The clinical first inquiry under the First Amendment right of access test is whether the party seeking the right of access has demonstrated what the courts have said are beyond dispute a long history of openness to the particular type of proceeding issue. And here, there's no question that arbitration is a long-established, well-recognized separate type of proceeding. Well, should we look, Bill, at what happens in the Court of Chancellors since these are chancellors who are doing this, which is open in most respects except, I think, guardianships, rather than what is being done in arbitration? I don't think so, Your Honor, because what the District Court has said and what the Supreme Court has said is to focus us on a particular type of proceeding. And it's quite clear that while the rule may be different for federal judges because of Article III, state judges, as we discussed in our brief, can be assigned all kinds of non-judicial duties to those different than presiding over the kinds of proceedings that Article III judges are restricted to. So the mere fact that a judge is presiding, a state judge, we don't think can be taken to say that this is necessarily a proceeding that is the equivalent of a civil trial. It's certainly a key feature, though, and a big problem, at least from the standpoint of the objectors of this case, that it is a state judge who is presiding with authority conferred on that person by the state, which arguably converts this into a public proceeding, not a closed-door proceeding. Well, Your Honor, that's why I think it's helpful to sort of separate the arbitration proceeding from the judge, because I think to take the first step first, the mere fact that the state sponsors an arbitral forum or the government sponsors an arbitral forum can't by itself, I don't think, change that proceeding from an arbitration with its long history of confidentiality into something that's open, because I have trouble disagreeing with you on that. The problem is when a judge steps in with their own, I assume, with powers of the state and has the power to issue enforceable judgments. I mean, at that point, maybe you're more like a civil proceeding than you are an arbitration proceeding. Well, I think the critical difference is the judge is not clothed with the powers of the state in presiding over the arbitration. The only reason the judge has the power to issue an arbitral award is because of the party's consent. It's not a case. And that, we think, is the critical distinction between arbitration proceedings and all other proceedings. But it is a judge with the powers conferred upon that person by the state of Delaware. Well, Your Honor, the powers that were conferred upon that person by the state of Delaware, do they include both the powers of the judge and the powers of an arbitrator? That's exactly what the statute is, Your Honor. And is that position of the Delaware legislature that these guys may be chancellors in one aspect of their life, but the power conferred upon them in an arbitration is the power of an arbitrator? That is exactly our position, Your Honor, just as the chancellor sits on the board of pardons. And when he's sitting on the board of pardons, he's exercising powers separately conferred upon him by Delaware as a member of the board of pardons. Here, he's not acting in his role as chancellor presiding over proceedings that are not a function of consent, but rather proceedings where the parties can be coerced to appear by an exercise of state power. Here, he is acting in a different role as an arbitrator. And the only reason he can act in that role is because the parties have consented to it. I assume the title of judge goes with the chancellor. Is that accurate? He or she is still a judge. I don't know, Your Honor. I assume the situation in arbitration would be the same as was the chancellor sits on the board of pardons. I think it's the people probably would call him or her judge, just as when the proceedings that we discussed in our briefs in federal court, federal district courts, and in other state courts where magistrate judges and other judges preside, they may call judge, but the nature of the proceedings is quite different because the power that they have to act falls entirely from a party's consent. So the parties have consented, the proceeding couldn't take place. Where does this take place, these so-called arbitrations? They take place in state buildings. In courthouses? In courthouses, yes, Your Honor. And are the so-called arbitrators wearing robes? I don't know the answer to that, Your Honor. I'm sorry. I would imagine not because they're formal proceedings. No, you don't know. If you don't know, then the answer is you don't know. You talk about consent. Can the consent to participate in this arbitration be a consent, which is a clause in the original contract between the parties, which may now, five years later, be presented for arbitration, or does it have to be a consent by both parties at the actual time of arbitration? It can be a pre-dispute consent, but the statute restricts the parties that can enter into that consent. They have to be business disputes, no consumers. That's a limit on the amount of dollars in controversy if it's a monetary case. $12,000, right? A million dollars. $12 million. A million dollars, Your Honor. A million. So they're not for ordinary litigants. They're for extremely wealthy, well-financed litigants. He's not going to be eloted. He is eloted. He certainly intended to be eloted. That was the whole point of it. And it's $6 million a day as it goes on, is that right? It starts at $12 million. Am I wrong? It starts at $12 million, and for some reason I think it is. That's right, Your Honor. Yeah, what the poor litigants are paying to participate in this, quote, arbitration? We have a threshold of the amount of controversy of $1 million. The million-dollar amount of controversy is there. I think the question, and I apologize, I'll have it on rebuttal, is what the fees are. The fees are $6,000. I think they're $6,000. $6,000. But this is classic arbitration. Arbitration is a well-recognized system imposed by Congress in the Federal Arbitration Act. Yeah, but not handled by judges. Well, there is a history, and we talk about it in our brief, of judges handling arbitration, both in the 19th century and some instances in the 20th century. And there also are instances where other states, and Delaware is one, have similar systems in their city, and judges handle arbitration. But I wonder if they have been doing it in the model that Delaware has adopted in this case. I mean, with a judge in a courtroom that is closed, and the judge having the power to issue enforceable judgment. Well, let me answer your question about enforceable judgment. It just seems to me that the Delaware model is very novel. I think model for judge-run arbitration. I think without the enforceable judgment, it's quite consistent with ordinary arbitration that happens in many, many private arbitral forums, both in the United States and in other countries around the world. The enforceable judgment is a feature of the system that the parties consent to. Obviously, like everything else in arbitration, it's only available because the parties have agreed to it in advance. So it's different than the entry of an enforceable judgment where someone has been brought into a proceeding against their will. But I think we made the point in our reply brief, if the court were to conclude that the enforceable judgment is something that makes this proceeding permissible, that is something that is created by virtue of court of chancery rules. And I think the statute that governs this 349-1, which talks about application to the Delaware Supreme Court to vacate, stay, or enforce a judgment, could be interpreted to require that the ruling of the arbitrator be brought to the Delaware Supreme Court to be enforced if you feel it can be effective. So if that last part is the part that the court were to find up to the First Amendment balance, we think the appropriate result would be just to strike down the rule that is the only thing that creates the enforceable order and leave the statute intact which would require the parties to take the arbitrator's award to be enforced in the Delaware Supreme Court. Would you agree that there are aspects of the Delaware proceeding that differ from a traditional arbitration? No, Your Honor. Except for the rule that I've just been discussing with Judge Fuentes, I don't think there's any aspect that differs from a traditional arbitration. The rules are that the party's consent is required. That's the bedrock requirement that distinguishes arbitration from judicial and civil trials. Otherwise, there's the flexibility of procedures. There's confidentiality. There's the lack of precedent. There's also the very critical factor of very, very limited judicial review which is one of the key distinguishing factors between arbitration and a civil trial. Is there an equal protection problem here in the sense that some individuals can have access to a state-conducted proceeding but some individuals cannot have that same access? I don't think so. I guess there could be a rational basis test, but Delaware is giving access to this proceeding to its domiciliaries, and that seems perfectly rational to me. Of course, it's limited by domicile as well as ability to pay for the proceeding. There are limits, and one of them is you have to pay $6,000 a day. You have to be a domicile of Delaware, and not everybody's going to fit in 10. Not every member of the public will have access to this proceeding. Or the business community. I think there are many government programs that require payment. So what? I think Judge's question was does requiring payments create some kind of unconstitutional distinction, and I think the answer is that it doesn't. One of the reasons for the fee requirement, I think, is to ensure that only wealthy corporations can take part of this. I think I would disagree with that, Your Honor, and say that it's to focus on the kinds of business disputes that typically go to arbitration and to provide for the Delaware domiciliaries the kind of arbitral services that other countries are providing to their corporate domiciliaries. Thank you. Thank you. Good morning, Your Honors, and the accused in court. I'm David Finger. I represent the Delaware Coalition for Open Government. The argument so far, Your Honor, and the federal members have asked about is the distinction between arbitration and trial. And in the briefing there was a question, is it analogous to a trial? I'm going to go a step further. It's not analogous to a trial. It is a trial. That is the type of proceeding. I went back to the Wall Street Dictionary to see how to define a trial, and it was defined as a judicial examination and determination of issues between parties to an action, whether they be issues of law or fact. That's what happens in this proceeding. That's what happens in arbitration, too. That's true. They are identical. The only difference is format and how the case is prepared and possibly how it's presented. When you say format, do you mean the use of a chancellor as a judge to preside? No. I'm speaking in general how you distinguish private arbitration from litigation. Okay. But it's the same here. In the briefing, they adapt a format from the private sector. The format is a little quicker, perhaps. The scope is done a little differently. You don't have the privilege. It's more flexible. It's more expeditious. It's more expedient. I would certainly disagree with that. The court of chancellor has bragged itself that their litigation practice is as expedient and efficient as arbitration. That's what I was talking about. Arbitration is more expedient, more expeditious. It costs a little bit more. Let me rephrase it. Before this statute was passed, the court of chancellor, in her decisions, has said in litigation in that court, matters will be resolved as quickly and as expediently and as efficiently as if the party were to provide arbitration. So, as far as this court is concerned, there is no difference in that aspect. Now, you heard another argument. It's a strict element to pass a statute which made no reference to arbitration but offering people, the business community, expedited proceedings, saying you're going to another courtroom. We'll make it a little quicker. You get to trial in 90 days. Judges won't write opinions. It's a big time saver. You just get a ruling that's thumbs up or thumbs down. You have restricted appeal rights, and that will be quicker too. And then added, and that's going to be confidential. I don't think this court would have any problem saying that violates the First Amendment right of access. No, arbitration is not ordinarily open to everyone. Private arbitration is not open. Yeah. And the history... Why makes this public arbitration? It's a public arbitration because it is, as Your Honor pointed out, it is a judge acting not by contract but by power granted by state statute. But by power granted by state statute to be an arbitrator. What does that mean? How does that differ from the judicial world? Because the legislator of the state of Delaware has said the Chancellor of the Court of Chancellors of the State of Delaware, besides their judicial duties, will be handed also these arbitration duties. But again, Your Honor, it's a legislature. It has no practical, functional difference. Well, I mean, it's a power conferred by the legislature. It's a power to be a Chancellor. It's a power to be an arbitrator. Again, Your Honor, they use the term different terms. But to determine a substantive difference is not a use of my power. Your Honor, what if I were to, in statute, substitute the word Chancellor or Chancery in Chancellor Judge and instead put in the word Expert Arbitrator? Would you have any problem with the proceeding? Absolutely. Again, Your Honor, we're just using labels. We're using labels. There are no judges involved. We're going to bring in Expert Arbitrators to do the work. Close the proceedings. These are now arbitration proceedings, except we don't have a judge who has power conferred upon him or her by the State of Delaware. You've got an arbitrator from, let's say, a list of the American Arbitration Association. That would be far less of a problem, Your Honor. It still raises the question, is this person, this Expert Arbitrator, does his decision have immediate force of law? Well, it's like any arbitration. You've got to go to court and you've got to get the arbitration word filed and you've got to get it to the Supreme Court. It's like any arbitration. If they had to do that, and if they could take the Expert Arbitrator's word and bring it to court and get it confirmed, then no, that's not a problem. All right. So your problem is just with the use of the judge. Just with the use of the judge. So if the statute didn't use a Chancery Judge, use an Arbitrator, everything else would be fine. That's right. The court will charge the fees and all of that. Make sure, Your Honor, that the state would not pass that statute because they want the marketability of these particular judges. Marketability to who? The business community. The business community loves the Court of Chancery. Lots of people in Delaware are very sharp about business knowledge. I agree. Arbitrators who are former judges, for example. That's right. And talk about job creation. Job creation should be in the private sector with retired judges, with expert lawyers. But the point is, and I'm trying to figure out what the essence of your problem is with the proceeding. I've seen it happen. It's the use of a judge in a closed-door setting. That's correct, Your Honor. That is the core. Is it the amount of money that's involved?  That does not enter into it, Your Honor. The core of it is you're having a judge empowered to act by state law, carrying evidence, deciding the rights and responsibilities of private parties as part of the judge's duty to do these matter-of-the-little rights. What does history and logic tell us about that procedure as being wrong? That, Your Honor, that goes back to the public court case. This court has recognized for many, many years that trials, that a jury-protected proceedings are open to the public. Does that mean that if a judge is there, the public wants to know what's going on? Yes. That's correct, Your Honor. Once you get farther away, for example, the history of cases in this court shows that the further a docket or a proceeding gets away from adjudication, the less powerful can be the claim of first-degree murder of accesses. But I have no problem with any other aspect of the statute. It's just that basically it's the use of a judge with powers conferred upon him by the state and the enforceability that goes with it. The only objection we have, Your Honor, is the confidentiality. Well, arbitrations are traditionally confidential. Prior to arbitrations, Your Honor. Yes. And the history... There's a statute that says that magistrate judges can do arbitration. But this is non-binding arbitration. This, therefore, is not adjudicative. The courts and scholars have held that where it is non-binding, it is more like an advisory service. It's a margin side where they want to settle or they want to move forward. Mr. Pincus has conceded that if we were to say that the ability of the state judge to issue a judgment or to sign a judgment was a problem, they wouldn't do it. In other words, if we found that that was a constitutional problem, they wouldn't abide by that. They may think anything that is intuitive to amend the statute. That would be another issue. But right now, judges in federal and state courts are hearing arbitrations. But they are either... They are mostly almost exclusively, with a few exceptions, non-binding with the right to appeal a trial in a vote or there's no provision for confidentiality in certain states. Well, I can't say that the confidentiality is the big problem because arbitrations are traditionally confidential. I don't understand why that is the problem. I would say it's not government-adjunct arbitrations. Oh, well, what you're saying is that these are more like civil trials and they really are different. That is exactly your point. They are in form and substance civil trials. They have evidence. They have a denomination. They have cross-denomination. That's true about arbitration, too. Yes, but again, it is not what the title is, the function. But the Delaware legislature has said that we differentiate between the roles that certain individuals play as a chancellor on one hand and as an arbitrator on the other hand. Can't you, in a state court system, does not the state legislature determine the function and role of people who may be judges, people who may be the same person, may have another capacity as on the board of pardons as determined by the state legislature? We have constitutional limitations, Your Honor. I would suggest the difference between the two. Well, isn't that then the constitution of the state of Delaware rather than the constitution of the United States? And we are because we still have the First Amendment applicable to the states. Because it's not a civil trial because the legislature of Delaware has determined that these individuals, when they preside at arbitrations, are arbitrators, not judges. But again, you're going back to the nomenclature. What is the function of the legislature? Well, it's the nomenclature that the state legislature chose to put on. It's the function that the state legislature chose to put on. Well, I respectfully submit, Your Honor, that nomenclature cannot override the First Amendment. If the First Amendment says that the purpose is to ensure that when judges are performing a legitimate function, that they are open to the public and have confidence in what they're doing, that they are not passing or deciding cases in one way in private and in another way in public, then merely nomenclature is not enough. But they're not... So you're saying if they're judges, and I'm saying if they aren't judges, then that is a different situation. It is up to the legislature of the state of Delaware to determine whether they are judges or whether they are arbitrators. I understand, Your Honor, but I do not understand that if we're talking about a function not formed, or what they call it, if it still has the effect of affecting the private rights of private parties through their power granted by the state in the way that judges do. Well, no, you just said in answer to a question by Judge Wontek that these were expert, experienced arbitrators, that you wouldn't have a problem. Right, because there wouldn't be judges who were clothed with the power of the state. But the judges who are clothed with the power of the state in one capacity are not necessarily clothed with that same power of the state in another capacity. If they perform the same function, I don't understand how they're not clothed with the power of the state. And if their decision has automatic force and effect of a judgment of the court, then how can they not be judges? Because they're arbitrators. Arbitrators historically don't have the power to have a legal judgment effective. That's actually a point that I thought you might address. We have to apply a test concerning the history of arbitration to this proceeding. What is it about the history? What should we be looking at now? Your adversary has said we should look at arbitration proceedings and the history of arbitration proceedings. I'm not sure we should go that way because this is really a new model. That's correct, Your Honor. So what are we going to look at? We look at comparable proceedings to which the First Amendment practice applies. Such as? Are you pulling yourself up by your own bootstraps and saying the First Amendment applies because historically this falls within that definition without determining prior to your conclusion what the situation is? Let me try to refer you, Your Honor. If this is adjudication, then there is a history of adjudication in the court system as the public or case found through a detailed history. If this is adjudication, that is the deciding of cases of private parties based on evidence and law, then there is a history. There is a law history. And so what's the history of this case? I'm going to listen to the history. What is the history that would inform us that the proceeding in this case is constitutionally affirmed? The history of adjudication. If you call it a trial, if you call it something else, if it looks like a duck, it's a duck. It's a duck. And the current chancellor? I do not belong to that. Let's respect the rule. But this is, in urban cases, the second-degree cases, and even I think Judge Adams of this court in the dissent noted that where there are new models coming, we have to look to how they fit into existing models. So your point is that we should look at this as a very simple proceeding. Exactly. It's a bit of a hybrid, though. It's not exactly a simple proceeding. The only difference is the meaning, Your Honor. It's the same. There's discovery. There's witnesses. There's examination. There's cross-examination. There's a ruling by a state official. There's a dispute. How is that different from trial? The parties have consented to be there. They only consent? And in trials, one side frequently has not consented to be there and is having the power of the state coercively determine their property, other aspects of their life, whereas here we have two parties who have consented to come in and have an impartial arbitrator determine between them what the resolution of the problem is. The consent is only by virtue of a power of a statute. It is not by virtue of a private contract. Without the statute, they would not be allowed to contract and have these judges hear it. And it is not consensual in the sense that they both hold the case and not one of the others can be a problem. It is adversarial. One side follows the other. But they have consented to come before the forum that is being presented. But they have chosen the format for themselves. So you say historically that these types of proceedings, like civil proceedings, should be open to the public. That's right. What about logic? How does the logic aspect of the analysis tell us that this should be an open proceeding? There should be no problems. As the Publicker case shows, and the Susskind case shows, there are several logic things. It promotes the protection of people. They find people will say one thing in private and something else in public if they're being observed. And the most important logic test is... Poorly quoted. Poorly quoted. It's that kind of logic. It's that the idea of the judiciary promoting not only fairness to Trump but the appearance of fairness. As Justice Berger said in this report, people don't expect their institutions to be infallible, but they have a hard time accepting what they can't see. That is the whole core of the First Amendment right of access. But if these two companies have had a dispute, go to private arbitration, the public will not see what happens. That is the option that they have. And we should do that. Well, does not the state of Delaware have the option to create a private arbitration using those individuals whom it elects to designate as arbitrators? And the fact that these individuals may have another function does not mean that they aren't operating under the authority of the legislature to be arbitrators when they arbitrate. If they are judges performing judicial functions... Yes, they are. But according to what the state of Delaware has done, they are arbitrators performing arbitral functions. The arbitral functions are no different from judicial functions. And we have not heard anything to say what they do differently. The only distinction they've made is that the parties consent. But the point of view has to be from what do the judges do, not what the parties do. Thank you, Mark. Thank you. May I ask a question? Have there been proceedings over this statute? There were between four and six proceedings prior to the decision of the district court in this case. And you're familiar with the proceedings? In other words, mechanically, I just wanted to get in there. The judge goes on a bench in a courtroom, and the courtroom door is locked, and the judge wears a robe. Is that what happens? I have not participated personally. I have no anecdotal evidence. Okay. As long as they're one of the cases switched in mid-trial to private. Has this not been reviewed by the state, too? As I said, the statutes I reviewed after they were cited all indicated that they were either non-binding or to appeal, or they were not confidential. They were not? They were not confidential. The statutes say they're confidential. I can't really get too involved in the confidentiality, because I always thought that arbitrations were confidential. Private arbitrations were. There's no history of this Court adjourned arbitration being confidential. Ah, that's the difference. Thank you. Thanks. I'd like to pick up on Judge Flanagan's question about how does the history and logic test apply here. What this Court and the Supreme Court said is, look at the particular proceeding, and it's clear that the mere fact that a judge presides over the proceeding does not mean that the right of access applied, I think it's a public perception, though, that there is a judge who is appointed under the laws of the state who has the powers of a judge conferred by the state or the Constitution of the state. And as Mr. Finger said, the public is interested in what the judge is doing at once, and it instills confidence in the judiciary. Those are all statements that are made by the cases that have looked at this. In terms of the history and logic analysis. But the rationale for an access right to civil trials? The idea that this is a judge involved is really probably the most important aspect of the statute and whether the proceeding should be open or closed. What Medellin is trying to do with being the forefront in resolving these disputes of the arbitration, that's not really an issue here. Not the fees that are charged. That's not an issue here. The issue here is, as I understand it, is a judge, and the court is closed. I understand that, and I think that's why I say there are other kinds of proceedings that judges preside over, family court proceedings being one, but they're closed. So it's a look at the particular kind of proceedings that the history test says. Traditionally, judges always handle family court proceedings. That's not very persuasive. I mean, that's what judges do. I agree, Your Honor. It's something judges do, but because there's a history that those proceedings are closed. There's no history that says that chancellors or judges can preside over private, what are essentially private arbitrations. Well, there is some history, Your Honor, which we will say in our brief, of judges through the ages presiding over arbitrations. And as you say, arbitrations are private. I think another relevant way to look at the history test is to go back to this court's dissent, their decision in the First Amendment Coalition, which dealt with the disciplinary board. And there was a request that the court obviously found that proceedings before the disciplinary board were not subject to a right of access. And one question there was, well, aren't these so similar to each other? That's been a question recently. You know, that's, I would say, in the forefront of one of the issues. Well, it looks like the disciplinary board proceedings are closed, but there's a history of those proceedings being closed. Well, actually, the court in its opinion said sometimes they had been open before the court issued its ruling, but the court said there was none. The critical question was, is there history of them being open? And then the argument was, well, gee, isn't this sort of just like an impeachment proceeding, which is open? And the court said, if the Constitutional Convention created the disciplinary board and replaced impeachment, created a new substitute procedure, then maybe that other history was appropriate to impute to this. But that didn't happen there. It was a new, different procedure, a supplement. And that's exactly what's happened here. Civil trials are not replaced. This is a new function that's being given to judges. We think there's a history that judges presiding over arbitrations have been confidential. But even if that weren't so, this is a new proceeding that's been created that has no history of openness based on the proceeding, and we feel the difference. I think it should be treated the same way. So you say a new function given to judges. You say that they are judges acting as arbitrators, or are you saying that, according to what the Delaware legislature said there, they are state employees acting as arbitrators in a certain function? They're state employees that have a variety of roles. That's a fundamental difference, as Warner pointed out, between Article 3 and the constraints that it imposes on federal judges and the fact that a state doesn't have to impose those same constraints on people who, as part of their state jobs, serve as judges, but as part of their state jobs do lots of other things that have nothing to do with judging. Is this court in a position where we can say we will approve all of this statute except for the section which provides for automatic judicial and premature ruling on the determination of the arbitrator? We can't rewrite the statute. It's Delaware's statute. It's not a federal statute. The statute itself does not say that the awards are automatically enforced. What the statute itself says in 349 is that the party can make an application to, quote, vacate, stay, or enforce the arbitrator's decision. That's not where we're in court. That's not where we can't take a statute and rewrite it if we'd like to. I think that that language is quite susceptible to the interpretation that enforce means that the award is not enforceable until there's been an application to the Delaware Supreme Court. The Chancery Court has issued a rule itself that says that once the arbitrator's award is entered, that it's entered as an order of the Chancery Court. But that rule, as Ron said, if that's the problem, that rule could be struck down with the first amendment and then the Chancery Court would have to adopt a rule that says, or the Delaware Supreme Court actually would have to adopt a rule say, once you gave the arbitrator's award, come to us and we'll have an enforcement procedure. So I think that's clearly within the scores of the article. And that would be public. Yes, but once there's an application to enforce, we have to have applications public, and all of the proceedings are public, and to the extent the proceedings before the arbitrator are relevant and introduced in the proceeding to enforce or set aside, it all becomes public. This is a timing question. Mr. Strickler, the judge in the first instance, is that correct? Yes, Your Honor. Thank you. Thank you. Thank you. You will take this interesting case under advisement.